# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| David D. Walker, | |
| Plaintiff, | Case No. 13 C 1354 |
| v. | |
| Parthasarathi Ghosh and<br>Wexford Health Sources, Inc., | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This is an Eighth Amendment case alleging denial of medical care. Plaintiff David Walker suffers myelomalacia (a degenerative spinal condition) and alleges that Defendants Dr. Parthasarathi Ghosh and Wexford Health Sources, Inc. were deliberately indifferent by failing to procure physical therapy from April 2010 to December 2011 to treat Plaintiff's medical condition.

Defendants move for summary judgment [70]. For the following reasons, the motion is granted.

## I. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary

judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

## II. Facts[1]

Plaintiff is an inmate at Stateville Correctional Center who has been diagnosed with myelomalacia. DSOF ¶¶ 3, 49. Myelomalacia is a degenerative spinal condition where peripheral changes to the spine place pressure on the spinal cord, causing it to soften. DSOF ¶ 49.

The relevant background about Plaintiff's medical care begins February 19, 2010, when Dr. Yogesh Gandhi, a specialist in treating complex spine disorders at the University of Illinois at Chicago ("UIC"), treated Plaintiff and found evidence of significant narrowing of his spinal cord at the T3 and T4 levels (which refer to particular vertebra in the thoracic spine). DSOF ¶¶ 54, 69. Dr. Gandhi recommended surgery, and both Dr. Ghosh, the medical director at Stateville Correctional Center, and Wexford Health Sources, a private contractor of medical

---

[1] Defendant's Local Rule 56.1 statement of facts [71] is referred to as "DSOF." Plaintiff did not respond to DSOF, so this Court deems them admitted. Fed. R. Civ. P. 56(e)(2). Plaintiff himself agrees that Defendants "have tried to fairly state [the facts]." [77] at 1. Plaintiff also has not submitted responsive Local Rule 56.1 statement of facts but rather has attached certain exhibits to its response brief. Despite this technical failure to comply with Local Rule 56.1, this Court nonetheless considers those exhibits to give Plaintiff the benefit of the doubt as the nonmoving party at summary judgment. Fed. R. Civ. P. 56(e); *see Steve v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) (recognizing that it is within this Court's discretion to apply Local Rule 56.1 strictly).

2

services for the Illinois Department of Corrections, approved the recommendation. DSOF ¶¶ 4-5, 28, 69, 72-73, 77.

Plaintiff underwent surgery on April 8, 2010. DSOF ¶ 77. The next day, Plaintiff received a consultation from a UIC physical therapist. DSOF ¶ 78; UIC Medical Records [74-4] at 000097-99. The therapist concluded that Plaintiff had no functional limitations and did not require further physical therapy. DSOF ¶ 78. Her report stated under the "Discharge Instructions" field: "Pt [patient] does not require further IP PT [inpatient physical therapy]." UIC Medical Records [74-4] at 000098-99. The physical therapist recommended that Plaintiff not lift weights heavier than five pounds and be placed in a first floor cell. DSOF ¶ 78; UIC Medical Records [74-4] at 000099. Plaintiff recalls the physical therapist teaching him exercises he could do on his own but does not recall the therapist recommending formal physical therapy sessions once he returned to Stateville Correctional Center. DSOF ¶ 18.

Plaintiff was discharged from UIC on April 12, 2010. DSOF ¶ 77. UIC prepared a "Discharge Patient Instruction Form" that included that Plaintiff should not lift weights heavier than 10 pounds (an increase on the physical therapist's recommendation). DSOF ¶ 79; UIC Medical Records [74-4] at 000100-02. The Form did not recommend that Plaintiff receive physical therapy. *See* UIC Medical Records [74-4] at 000100-02.

Also on April 12, Dr. Ghosh evaluated Plaintiff. DSOF ¶ 80. Plaintiff testified that Dr. Ghosh agreed to place him on the physical therapy waiting list.

DSOF ¶ 19. In the medical notes from that day, Dr. Ghosh referred Plaintiff to the infirmary for recovery and observation and, consistent with UIC's discharge instructions, recorded that Plaintiff should not lift weights heavier than 10 pounds. DSOF ¶ 80. It is Dr. Ghosh's regular practice to base his treatment decisions on the recommendations and orders from outside specialists. DSOF ¶ 51. The notes do not contain a referral for physical therapy. *See* Medical Records [74-2] at 000015.

Plaintiff was admitted to the infirmary at Stateville Correctional Center on April 13, 2010 and discharged three days later, on April 16. DSOF ¶ 80; Medical Records [74-2] at 000019. While Plaintiff was at the infirmary, on April 15, Dr. Ghosh referred Plaintiff to Dr. Gandhi for a post-operative care follow-up appointment. DSOF ¶ 81; Medical Records [74-3] at 000052. Wexford Health Sources approved the referral. DSOF ¶ 81.

On May 21, 2010, Dr. Hari Krishna, another UIC specialist, treated Plaintiff in Dr. Gandhi's absence. DSOF ¶¶ 81, 88. The notes from the appointment record that Plaintiff complained of low back pain and weakness. DSOF ¶ 88. The notes do not show that Plaintiff requested physical therapy. DSOF ¶ 88; *see* Medical Records [74-4] at 000110-11. Dr. Krishna recommended an MRI of Plaintiff's spine and follow-up with Dr. Gandhi. DSOF ¶ 88. On May 21, 2010, Dr. Ghosh reviewed Dr. Krishna's recommendations, and Dr. Ghosh made an MRI referral on June 3, 2010. DSOF ¶ 89. Wexford Health Sources approved the referral on June 14, 2010. *Id.*

The MRI was performed on July 16, 2010. DSOF ¶ 91. Dr. Ghosh reviewed the MRI report on July 27, 2010 and found congenital spinal canal stenosis. *Id.* In

4

the medical records, Dr. Ghosh noted another referral to UIC would be made for Plaintiff. *Id.* However, a referral was not made; Dr. Ghosh testified that he mistakenly believed a referral already had been made. *Id.*

Dr. Ghosh saw Plaintiff on August 17 and November 22, 2010 in response to complaints of back of pain. DSOF ¶¶ 92, 94. Dr. Ghosh prescribed pain medications to Plaintiff both times. DSOF ¶¶ 92, 94. Also on November 22, Dr. Ghosh referred Plaintiff to UIC for post-MRI follow-up care. DSOF ¶ 94. Wexford Health Sources approved this referral, and Plaintiff presented at UIC on February 18, 2011. DSOF ¶ 95.

On February 18, 2011, Dr. Gandhi reviewed Plaintiff's MRI and found that "[i]t shows adequate decompression with no evidence of cord compression." DSOF ¶ 95; UIC Medical Records [74-4] at 000115. Under the "Assessment and Plan" field of the medical notes, Dr. Gandhi made only one recommendation: "At this point, I have recommended the patient to continue with physical therapy and return to see us on an as-needed basis." DSOF ¶ 95; UIC Medical Records [74-4] at 000115. In another medical form labeled "Report of Referral," which is directed to Stateville Correctional Center, Dr. Gandhi recommended physical therapy for three to four weeks. DSOF ¶ 96; Medical Records [74-3] at 000058.

About this appointment, Plaintiff testified that he told Dr. Gandhi he had obtained a physical therapy referral at Stateville Correctional Center but it had not come through. DSOF ¶ 20. Dr. Gandhi purportedly responded: "okay, I'm going to recommend that." DSOF ¶ 20 (citing Walker Dep. Tr. [71-1] at 53:5-10).

5

Dr. Ghosh approved Dr. Gandhi's physical therapy recommendation five days later (February 23), and Plaintiff's medical records show that a referral in fact was made. DSOF ¶¶ 96-97. There is conflicting testimony whether Plaintiff saw Dr. Ghosh before Dr. Ghosh's March 31, 2011 retirement. DSOF ¶ 4. Dr. Ghosh states that he did not see Plaintiff. DSOF ¶ 97. Plaintiff testified that he saw Dr. Ghosh to have certain medications renewed and, at those times, asked Dr. Ghosh about the status of his physical therapy referral. DSOF ¶ 22. According to Plaintiff, Dr. Ghosh responded that Plaintiff was on the waiting list. Walker Dep. Tr. [71-1] at 65:6-15.

Plaintiff was seen by a physical therapist on December 8, 2011 and again on December 15, 2011. DSOF ¶ 98. On December 15, the physical therapist reported: "Pt [patient] claims therapy has worsened his condition." Medical Records [74-3] at 000061; *see* DSOF ¶ 23. The therapist also discontinued any future sessions, explaining: "benefit of continued PT [physical therapy] unlikely due to pt's [patient's] unrealistic expectations." DSOF ¶ 98; Medical Records [74-3] at 00061; *see* DSOF ¶ 24.

Plaintiff's back problems continued into 2012 and 2013. On November 29, 2012, Plaintiff received another MRI, in response to his complaints about back pain. DSOF ¶ 99. On April 23, 2013, Plaintiff returned to UIC, where Dr. Troy Munson reviewed the MRI. DSOF ¶ 100. Dr. Munson found no signs of spinal compression at the T3 and T4 levels (the region of the thoracic spine repaired during the April 9, 2010 surgery). *Id.* However, Dr. Munson did find narrowing of the spine at the L4

6

to L6 levels (which refer to particular vertebra in the lumbar spine). *Id.* Dr. Munson concluded that the pain Plaintiff said he was experiencing fit with this narrowing. *Id.* Dr. Munson recommended surgery, which took place on May 29, 2013. DSOF ¶ 101.

Plaintiff reports that he is now doing well. [77] at 5 (citing Walker Dep. Tr. [71-1] at 71:24-72:4).

**III. Analysis**

    **A. Dr. Ghosh**

To prove a claim for denial of medical care, Plaintiff must show: (1) that he had an objectively serious medical condition; (2) that Dr. Ghosh knew of the condition and was deliberately indifferent to treating Plaintiff; and (3) that this indifference caused Plaintiff some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Under the second element, Dr. Ghosh must have had subjective knowledge of the risk to Plaintiff's health, and he also must have disregarded that risk. *See Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). Evidence that Dr. Ghosh acted negligently is insufficient to prove deliberate indifference. *See Hicks v. Churchich*, 161 F.3d 1030, 1040 (7th Cir. 1998). Rather, "'deliberate indifference' is simply a synonym for intentional or reckless conduct, [and] 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

7

There is no dispute that myelomalacia is a serious medical condition (element 1), and this Court will not question the parties' assumption. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). The dispute here instead is whether Dr. Ghosh was deliberately indifferent by not timely referring and procuring physical therapy for Plaintiff (element 2), and whether those delays caused any injury (element 3). This Court organizes its discussion as the parties have: around the April 8, 2010 surgery and the February 18, 2011 UIC appointment where Dr. Gandhi recommended physical therapy.

### 1. April 8, 2010 Surgery

Plaintiff first argues that on April 12, 2010, Dr. Ghosh promised but failed to order physical therapy for him after Plaintiff's surgery. [77] at 5-6; DSOF ¶¶ 19, 80. Whether Dr. Ghosh made this promise or not (and this Court assumes that he did at summary judgment), Plaintiff, at best, has shown that Dr. Ghosh was negligent. That is not enough to sustain an Eighth Amendment claim. *See Forbes v. Edgar*, 445 F.3d 262, 266 (7th Cir. 1997) (finding that ordinary malpractice does not give rise to a constitutional claim). No jury reasonably could conclude that Dr. Ghosh was deliberately indifferent for at least three reasons.

First, no jury reasonably could conclude that Dr. Ghosh's failure to order physical therapy was anything but a mistake. A mistake alone may amount to negligence but certainly does not show a mental state of mind that rises to deliberate indifference. *See Qian*, 168 F.3d at 955; *Forbes*, 445 F.3d at 266.

8

Plaintiff himself agrees that Dr. Ghosh, at worst, made a mistake. When asked if he felt that Dr. Ghosh made a mistake or intentionally did something wrong, Plaintiff responded: "I feel he made a mistake." Walker Dep. Tr. [71-1] at 40:24-41:7. Plaintiff's subjective belief is corroborated by Dr. Ghosh's objective course of conduct. The undisputed record shows that Dr. Ghosh: (1) approved every treatment recommendation made by UIC; (2) repeatedly referred Plaintiff to UIC for continued care; and (3) prescribed pain medications to Plaintiff when he complained of back pain.

Plaintiff argues that he made "several complaints" to be seen by a physical therapist. [77] at 6. However, there is no citation to the record to support these allegations; nor does Plaintiff explain when and to whom those complaints were made. Plaintiff thus has not properly introduced evidence at summary judgment that can be used to create a genuine issue of material fact. Fed. R. Civ. P. 56(e); *see Steve*, 662 F.3d at 886-87 (recognizing that district courts are entitled to insist on strict compliance with the Local Rules).

Second, even without the physical therapy, Plaintiff received adequate medical care for his myelomalacia from April 8, 2010 to February 18, 2011. Inmates are entitled to adequate medical care; they are not entitled to any particular course of medical treatment. *Pyles*, 771 F.3d at 411-12; *Holloway v. Delaware County Sheriff*, 700 F3d 1063, 1073 (7th Cir. 2012); *Forbes*, 445 F.3d at 266.

By way of example, in *Pyles*, the inmate alleged that Dr. Magid Fahim (the medical director at Menard Correctional Center) persisted in an ineffective course of

9

treatment and refused to schedule an MRI or refer him to an outside specialist to diagnose his back injury. 771 F.3d at 406-07, 411-12. In support, the inmate introduced a letter from his family physician stating that she would have "referred him to a specialist if needed." *Id.* at 407. The Seventh Circuit, however, affirmed summary judgment in favor of Dr. Fahim and denied the inmate's Eighth Amendment claim. *Id.* at 412. The Court found that Dr. Fahim's decision to forego an MRI was "a classic example of a matter for medical judgment," and was "implicitly endorsed by every other doctor who examined [the inmate]" and also did not order an MRI. *Id.* at 411. As for the outside specialist, the need for one was not "obvious," and the undisputed evidence showed that Dr. Fahim's choice to treat the back pain by prescribing new medications instead was not "blatantly inappropriate." *Id.* at 411-12.

As in *Pyles*, the record here does not show that Dr. Ghosh's failure to order physical therapy rendered his treatment of Plaintiff's myelomalacia blatantly inappropriate. The UIC physical therapist who saw Plaintiff following his surgery observed that Plaintiff had no functional limitations and did not require further therapy. DSOF ¶ 78. The therapist concluded: "Pt [patient] does not require further IP PT [inpatient physical therapy]." UIC Medical Records [74-4] at 000096-99. UIC's April 12, 2010 Discharge Patient Instruction Form also did not recommend that Plaintiff receive physical therapy. DSOF ¶ 79. Nor was a recommendation for physical therapy made on May 21, 2010, when Plaintiff received post-operative care at UIC. DSOF ¶¶ 81, 88. For his part, Plaintiff does

10

not dispute the fact that no one at UIC referred him for physical therapy until February 18, 2011. [77] at 5; DSOF ¶ 20.

Based on this record, a jury could not reasonably conclude that Dr. Ghosh's failure to procure physical therapy for Plaintiff was deliberately indifferent. Indeed, this case is even less compelling than *Pyles*, 771 F.3d at 407, where the Seventh Circuit affirmed summary judgment even though the record contained an outside medical opinion that the medical director there should have ordered an MRI. The record here does not contain even that. There is no medical opinion that physical therapy should have been prescribed during April 8, 2010 to February 18, 2011. The UIC physical therapist, in fact, concluded just the opposite. Moreover, no physical therapy recommendation was made at the May 21, 2010 UIC post-surgery follow-up appointment—an implicit endorsement that therapy was not required. *See Pyles*, 771 F.3d at 411.

Third, differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference—especially where, as here, the prison doctor is deferring to an outside specialist. *Pyles*, 771 F.3d at 409; *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 797 (7th Cir. 2014). The Seventh Circuit's decision in *Shields* is instructive. The Court held that prison doctors who approved a recommendation for physical therapy from an outside specialist were not deliberately indifferent, even though the recommendation ultimately was deemed to be inappropriate. 746 F.3d at 787-88, 797.

11

Under *Shields*, Dr. Ghosh would not have been deliberately indifferent if he had simply followed the recommendations of the UIC specialists and declined to order physical therapy. Dr. Ghosh's decision to go beyond these recommendations and purportedly recommend physical therapy, therefore, does not create a basis for liability. In fact, no UIC specialist recommended physical therapy until February 18, 2011, when Dr. Gandhi did so at Plaintiff's request. DSOF ¶¶ 20, 95.

### 2. February 18, 2011 UIC Appointment

Plaintiff also blames Dr. Ghosh for the delays in seeing a physical therapist after February 18, 2011, when Dr. Gandhi recommended that Plaintiff receive three to four weeks of physical therapy. [77] at 6-7; DSOF ¶ 96; Medical Records [74-3] at 000058. Dr. Ghosh made a physical therapy referral on February 23, 2011, and the undisputed record shows that Plaintiff in fact was placed on the waiting list for therapy at or near that time. DSOF ¶¶ 96-97. Plaintiff, however, was not seen by a physical therapist until December 8, 2011—a nine month delay. DSOF ¶ 98.

Dr. Ghosh retired on March 31, 2011, DSOF ¶¶ 4, 97, so he cannot be liable for conduct occurring after his retirement. *See Shields*, 746 F.3d at 797. And Plaintiff cannot prevail on a claim that Dr. Ghosh acted with deliberate indifference for the five weeks from when he made the physical therapy referral until his retirement. As the Seventh Circuit has observed, absent an emergency (and there is no emergency here), delays in medical care are inevitable and even more pronounced in a prison setting. *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010). Courts in this Circuit, accordingly, have found that prison officials are not

12

deliberately indifferent when they place inmates on a waiting list for care, despite the natural delays. *E.g.*, *Johnson v. Johnnie*, No. 10 C 891, 2013 WL 1286980, at *3-4 (S.D. Ill. March 27, 2013) (dentist placed inmate on the waiting list for tooth extraction and having cavities filled); *Hudson v. Dart*, No. 10 C 8253, 2011 WL 494375, at *2 (N.D. Ill. Feb. 7, 2011) (prison officials placed inmate on the waiting list for a bottom bunk); *Banks v. Montgomery*, No. 09 C 23, 2009 WL 1657465, at *4 (N.D. Ind. June 11, 2009) (nurse placed inmate on the waiting list to see an eye doctor). While prolonged delays certainly can give rise to deliberate indifference, *see Berry*, 604 F.3d at 442, the five week delay here is not so prolonged as to warrant a finding that Dr. Ghosh was deliberately indifferent.

Plaintiff argues that he complained to Dr. Ghosh about not being seen by a physical therapist and that Dr. Ghosh had the authority to move Plaintiff up the waiting list queue. [77] at 6-7; Ghosh Dep. Tr. [77-2] at 36:12-38:17. While Dr. Ghosh did have that power, the physical therapists set the waiting list queue, and Dr. Ghosh's practice was not to move an inmate up the queue and, as a corollary, move other inmates down absent good reason, such as an outside referral for "immediate[]" therapy. Ghosh Dep. Tr. [77-2] at 36:12-38:17. Dr. Gandhi recommended only a limited, three-to-four-week course of physical therapy—not immediate therapy.

Even if Dr. Ghosh was deliberately indifferent (element 2), Plaintiff has not shown an injury (element 3) during the nine-month lapse. When prison officials delay rather than deny medical care, the Seventh Circuit has required inmates to

13

offer "verifying medical evidence" that the delay (rather than their underlying condition) caused harm. *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007). This harm can be shown by demonstrating that the delay worsened the inmate's underlying condition, or that it caused the inmate prolonged and unnecessary pain. *Smith v. Knox County Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012); *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009). Expert testimony can satisfy this requirement but is not necessary. *Williams*, 491 F.3d at 715.

Here, the record lacks "verifying medical evidence" from which a jury could determine that the absence of physical therapy from February 18, 2011 (or even April 8, 2010) to December 8, 2011, after Dr. Ghosh's retirement, aggravated the myelomalacia or otherwise caused Plaintiff harm. The record, in fact, shows the opposite. On December 15, 2011, the physical therapist discontinued the therapy after just two sessions. DSOF ¶¶ 24, 98. Plaintiff alleged that the sessions were counterproductive, and the therapist found Plaintiff's expectations to be unrealistic. DSOF ¶ 98; Medical Records [74-3] at 000061; *see* DSOF ¶ 23. Likewise, Plaintiff has not introduced any evidence from which a jury could conclude that the absence of physical therapy caused Plaintiff prolonged and avoidable pain.[2] No doctor ever

---

[2] Plaintiff, as the non-moving party, had an obligation to marshal all evidence showing a disputed issue of material fact at summary judgment. *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Plaintiff thus cannot avoid summary judgment by arguing at the eleventh hour—after this motion has been pending for more than five months—that he should be given further opportunities to look for some unknown expert who might issue an opinion (presumably along with the requisite "verifying medical evidence") that he sustained an injury from not receiving physical therapy at the time in question. Plaintiff had the opportunity to conduct expert discovery during these proceedings, and Plaintiff also could have sought leave to conduct further

told Plaintiff that his body would have healed better had he received physical therapy earlier. DSOF ¶ 25. One of the outside specialists, Dr. Munson, attributed the pain Plaintiff said he was experiencing to narrowing in another region of his spine (albeit this medical opinion was rendered after December 8, 2011). DSOF ¶ 100.

For these reasons, summary judgment in favor of Dr. Ghosh is warranted.

### B. Wexford Health Sources

Having found no liability as to Dr. Ghosh and no actionable injury during the time period at issue, April 8, 2010 to December 8, 2011, Wexford Health Sources, a private contractor of medical services at Stateville Correctional Center, cannot be liable and summary judgment in its favor is warranted. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013); *Pyles*, 771 F.3d at 412. The Seventh Circuit in *Ray* instructed that absent an actionable injury, it is unnecessary to decide whether Wexford Health Sources' policies are unconstitutional in a vacuum. 706 F.3d at 866. That is the situation here.

## IV. Conclusion

Defendants' motion for summary judgment [70] is granted.

Dated: March 25, 2015                          Entered:

_[signature: John Blakey]_

_____
John Robert Blakey
United States District Judge

---

discovery before responding to Defendants' motion. *See* Fed. R. Civ. P. 56(d)(2). He chose not to do so.

15